Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

**Attorney for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR 05-60008 |
| Plaintiff, | **SUPPLEMENT TO FIRST MOTION FOR DISCOVERY** |
| v. | |
| **PIROUZ SEDAGHATY,** | |
| Defendant. | |

### INTRODUCTION

On October 22, 2007, the defendant, Pirouz Sedaghaty, by and through his attorneys, Lawrence Matasar, and Federal Public Defender Steven T. Wax, filed his First Motion for Discovery.  Since then, the government has provided an initial batch of discovery totaling 1,221 pages of reports and financial records.  In addition, the government has made available for inspection material seized pursuant to a search warrant and/or obtained pursuant to purported consent on February 18, 2004, and material that had been provided to the government by attorney Lawrence Matasar on Mr. Sedaghaty's behalf on or about February 17, 2004, pursuant to subpoena.

In addition, and perhaps with the most relevance to this pleading are two positions the government has taken in the discovery process. First, the government has advised counsel that, contrary to the norm in this district, this is not an open discovery case. Second, the government has advised that, in its judgment, there is no need to provide classified material in the discovery process. Both of these positions are likely to require greater judicial involvement in the discovery process than usual.

This pleading is filed because Mr. Sedaghaty's review of the material that has been provided and his own investigation cause him to believe that the government is in possession of numerous additional reports and documents that are exculpatory and material to the defense that were obtained through criminal investigatory means that should not be classified. We further believe that the government is in possession of classified material that is, likewise, exculpatory and material to the defense. In this pleading, Mr. Sedaghaty renews the requests previously made and supplements them with the following analysis and additional requests.

For reasons more fully set forth below, Mr. Sedaghaty is entitled to the disclosure he seeks for two distinct reasons. First, virtually all the material relating to him that is in the possession of the government is exculpatory, both on the question of willfulness, and on other issues in the case as well. Second, some of the information he seeks is necessary in order for him to frame motions to suppress and to dismiss.

I.  THE EXCULPATORY NATURE OF THE EVIDENCE SOUGHT

    A.  Willfulness

The discovery and investigation to date cause Mr. Sedaghaty to believe that virtually all the material relating to him that is in the possession of the government, whether unclassified or classified, is exculpatory on the question of willfulness. The

government has alleged in count one of the indictment that Mr. Sedaghaty engaged in a conspiracy to impede, impair, obstruct, and defeat the lawful functions of the U.S. Immigrations and Customs Enforcement office and the Internal Revenue Service of the Department of the Treasury. The object of the conspiracy is alleged to have been to prevent the United States government from learning that certain funds were converted into travelers checks and covertly taken out of the country with the intent that they be delivered to Chechen mujahideen. Count two of the indictment alleges that Mr. Sedaghaty willfully filed a false tax return. That count alleges that the filing was willful by incorporating the introductory allegations and manner and means of the conspiracy count. That is, the government has alleged in both counts that it was his willful and intentional efforts to cover up his intent to get money from Al Haramain USA to Chechen mujahideen that renders Mr. Sedaghaty's acts criminal.

The information that Mr. Sedaghaty has seen from the discovery produced to date, and through his own investigation, includes virtually no evidence that he was involved in any terrorist or mujahideen activities, supported any terrorist or mujahideen activities, or funded any terrorist or mujahideen activities. To the contrary, the evidence shows that Mr. Sedaghaty is and has been a peace-loving man who practices a mainstream moderate Islam, has served as a spokesperson for moderation and ecumenical work, has explicitly, repeatedly and publicly rejected Islamic terrorism and has devoted his life to helping promote peace, harmony, and providing support for the victims of violence.

Government counsel have informed the defense that they will attempt to prove their case through circumstantial evidence. They have indicated that they do not have any "smoking gun" with respect to the intended disposition, or actual use, of the funds.

In the context of this case, material that either contains evidence supporting the statements asserted in the preceding paragraphs, or fails to contain any evidence of support for terrorist activities or mujahideen is exculpatory, whether derived from investigation and surveillance of any kind, including law enforcement initiated efforts, Article III judicial authorization, Foreign Intelligence Surveillance Court authorization, National Security letters, surveillance by law enforcement agencies, surveillance conducted pursuant to the President's or his delegates' directives, or any unlawful surveillance.

In determining what would be useful to the defense, it is important to keep in mind the teachings of the United States Supreme Court in *Alderman v. United States*, 394 U.S. 165, 182 (1969):

> admittedly, there may be much learned from any electronics, surveillance, which ultimately contributes nothing to probative evidence. But winnowing this material from those items which might have made a substantial contribution to the case against the petitioner is as task which should not be entrusted wholly to the Court in the first instance. . . an apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller where the individual on the other end of a telephone, or even the manner of speaking, or facts of any, speaking or using words may have special significance to one who knows more intimate facts of an accused's life, and yet that information may be wholly colorless and devoid of meaning to one less well-acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view, the task is too complex, and the margin of error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the government's case.

**B.     Materiality Of Disclosures For Framing Motions.**

In addition to the exculpatory nature of material discussed in the preceding section, disclosure of the: a) fact of; and, b) fruits of surveillance conducted pursuant to traditional Article III Judicial Authority, Foreign Intelligence Surveillance Court activity,

the U.S.A. Patriot Act, the use of devices such as National Security letters, and surveillance conducted outside of any judicial process on the authority of the President of the United States or his delegates is material to the defense and exculpatory regarding the filing of pre-trial motions to suppress and dismiss.

1.  **Motions To Suppress.**

Mr. Sedaghaty is preparing a motion to suppress all information obtained as a result of the execution of a search warrant that was based on the affidavit prepared by IRS agent Colleen Anderson. That challenge will include allegations under *Franks v. Delaware*, 438 U.S. 154 (1978). In preparing such a motion, Mr. Sedaghaty believes that it is highly relevant that the government has engaged in a long period of a variety of surveillance activities against Mr. Sedaghaty, Al Haramain USA, and Soliman Al-Buthe, surveillance activities which would have produced highly exculpatory information as to Mr. Sedaghaty, but failed to disclose those facts to the magistrate who issued the warrant. Material omissions as well as false statements are subject to challenge. *United States v. Jacobs*, 986 F.2d 1231, 1234-35 (8th Cir. 1993); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985).

2.  **Motion To Dismiss.**

If Mr. Sedaghaty was subjected to unlawful surveillance outside of any judicial process, whether or not on the authority of the President of the United States or his delegate, that fact is material to the defense and highly exculpatory because it would form the basis for a motion to dismiss based on outrageous government conduct.

## II. THE GOVERNMENT IS IN POSSESSION OF RELEVANT, EXCULPATORY, CLASSIFIED INFORMATION

Public and unclassified records establish that the government engaged in electronic surveillance, at least of the co-defendant Soliman Al-Buthe, the former co-defendant, Al Haramain USA, and their attorneys outside of any judicial process. This basic fact has been disclosed through litigation in *Al-Haramain Islamic Foundation, Inc., et al. v. George W. Bush, et al.*, CV 06-274 KI. In addition, review of documents filed in *Al Haramain Islamic Foundation Inc., et al. v. United States Department of the Treasury*, CV 07-1155 KI, reveals that the government is specifically relying on classified, as well as unclassified, information in support of its designation of Al Haramain USA and Soliman Al Buthe as designated terrorists.

In addition to the facts established regarding the existence of classified information related to Mr. Sedaghaty and this case from the two proceedings described above, this Court is aware that Mr. Sedaghaty has caused classified material to be preserved in a Segmented Compartmental Information Facility (SCIF) in Washington, D.C. Information available to counsel for Mr. Sedaghaty regarding that material cause them to believe that it is highly material to the defense of this case.

In addition to the facts established in the two preceding paragraphs, the discovery provided and investigation to date lead Mr. Sedaghaty to believe that he, the co-defendant, Soliman Al-Buthe, and former co-defendant, Al Haramain USA, were subjected to a long period of surveillance that included activities conducted pursuant to traditional Article III judicial authority, Foreign Intelligence Surveillance Court activity, the U.S.A. Patriot Act, the use of such devices as National Security letters, and that they were also subjected to surveillance conducted outside of any judicial process on the authority of the President of the United States or his delegates.

More specifically, the discovery produced to date reveals that the government had contact with Mr. Sedaghaty at least as early as September 15, 2001. Some of these reports bear an FBI file number out of New York that appears to relate to the attacks of September 11, 2001. Some reports bear an Oregon file number. The defense does not know at this point whether the government had been engaged in any surveillance or investigation of Mr. Sedaghaty prior to September 15, 2001. The discovery reveals that, while the September 2001, contact was in the nature of a general canvass of Muslims in Oregon, the government opened an investigation in Eugene as early as October 2, 2001, the date on which subpoenas were issued over the signature of AUSA Cardani to Jackson County Title for records related to the property at 3800 S. Highway 99 in Ashland, Oregon, the address of Al Haramain USA and Mr. Sedaghaty's residence. In addition, a number of individuals observed what they believed to be video surveillance of Mr. Sedaghaty's property in the same timeframe.

Further, newspaper accounts regarding government investigations generally, subsequent to September 11, 2001, and records produced in other prosecutions since that date, make clear that the government engaged in a considerable amount of FISA, Patriot Act, National Security letter, and other surveillance outside of any judicial process. The publicly known facts are such that it is a virtual certainty that such activities were engaged in with respect to Mr. Sedaghaty and Al Haramain USA. Mr. Sedaghaty has personal knowledge of contact between United States and British authorities about his travel and activities based on comments made to him by British law enforcement or intelligence authorities who took him off a plane at Heathrow Airport in

London, England in 2002, while he was flying to Israel on his mission to provide assistance to Palestinian refugees.

## III.   SPECIFIC DISCOVERY REQUESTS

Mr. Sedaghaty hereby renews the requests made in the First Motion for Discovery filed on October 22, 2007, and hereby supplements it with the following:

31.    Interview Reports.

The discovery provided to date contains reports of interviews of Mr. Sedaghaty that include the names of other individuals and reports of interviews of Daveed Gartenstein-Ross that, likewise, contain the names of other individuals.  The discovery does not, however, include reports of the interviews of any of the people named in the reports provided, or of any other individuals.

Shortly after September 11, 2001, the government began a massive investigation of all Muslims living in the United States.  Pete Seda, as the most visible and outspoken Muslim in Southern Oregon, was included and had a number of contacts with the F.B.I. over the next several years.  The government has provided multiple reports of such contacts.  The nature of the government's investigation subsequent to September 11, 2001, is such that it is highly likely that the government has conducted numerous interviews of individuals mentioned by Mr. Sedaghaty and Mr. Gartenstein-Ross and other individuals about whom it has asked Mr. Sedaghaty.

As discussed above, any information showing Mr. Sedaghaty's peaceable character and pattern of peaceful, ecumenical work is exculpatory.  Because the investigation conducted by the defense to date has produced a wealth of such information, Mr. Sedaghaty believes that the core of investigation conducted by the government through interviews with people who have known Mr. Sedaghaty, prayed

with Mr. Sedaghaty, worked with Mr. Sedaghaty in his philanthropic work and businesses, and worked with Mr. Sedaghaty on civic projects, would have produced similar results. Under the Constitution and case law set out in Mr. Sedaghaty's First Motion for Discovery, there can be no question but that such information is material to the defense and must be disclosed.

As the government considers what exculpatory information it has, it is important to note that in the initial batch of investigation reports provided by the government, they did not include interviews conducted at the Bank of America in Ashland and with employees of American Express. When those reports were provided on February 22, 2008, review revealed that they are highly exculpatory because they show that all of Mr. Sedaghaty's actions were open and above board. Given the existence of a conspiracy charge involving efforts to impede government functions by disguising actions, Mr. Sedaghaty believes that information such as that revealed in the reports that were disclosed on February 22, 2008, is exculpatory and any other information that addresses similar themes is exculpatory as well.

32. All reports of interviews conducted in connection with this case should be produced. Some of the pages of discovery contain notes that are not legible. Provide legible copies of the following pages:

| | | | | | |
|---|---|---|---|---|---|
| 245 | 702 | 855 | 983 | 912 | 1035 |
| 246 | 703 | 882 | 1131 | 913 | 1038 |
| 410 | 704 | 994 | 984 | 916 | 1062 |
| 566* | 705 | 1178 | 1041 | 917 | 1064 |
| 569 | 793 | 998 | 1040 | 1012 | 1070 |
| 571 | 816 | 989 | 929 | 1014 | 1086 |
| 572 | 820 | 986 | 911 | 1016 | 1099 |
| 611 | 822 | 985 | 908 | 1026 | 1102 |
| 648 | 839 | 993 | 909 | 1032 | 1116 |
| 700 | 845 | 996 | 901 | 1033 | 1127 |
| 701 | 851 | 997 | 906 | 1034 | 1128 |

Page 9     SUPPLEMENT TO FIRST MOTION FOR DISCOVERY

1161		1166		1167		1170

33.	Bank records from June 2000;

34.	The full February 2000 bank statement. Government discovery page 1045 is page 1 of 2. Page 2 is not provided.

35.	State whether the government has provided all paper and electronic material that it obtained from accountant Wilcox. If any was not provided, provide it.

36.	All FBI reports of their participation in the arrest of Pirouz Sedaghaty;

37.	Reports from IRS Special Agent Kurt Charlton regarding the interview at which he participated of accountant Wilcox;

38.	Letter sent by Colleen Anderson to ISNA Canada on April 4, 2005. The discovery includes ISNA's response, but not Ms. Anderson's letter.

39.	Letter sent to Ms. Anderson by Dr. Mohammad Ashraf, the Secretary General of ISNA Canada. The letter is referenced in the discovery but not provided.

40.	All information from all government agencies regarding shipments in and out of the country made by Al Haramain USA and Al Haramain Riyadh and other Al Haramain branches and the Qu'ran Foundation. This would include customs documents, inventory receipts, investigation reports, photographs, etc., and any lists of disposal of products.

41.	On page 33, the discovery notes a check from November 1999, from Al Haramain to Islamic Horizons magazine and an advertisement. Provide copies of the check and advertisement.

42. Records of all communication, oral, written, telephonic, email, or otherwise, between El Fiki, Al Haramain, The Arborist, Soliman Al Buthe, and/or Pirouz Sedaghaty and any of their employees.

43. Daveed Gartenstein-Ross is reported in the discovery to have advised the government agency he had prepared an analytic report on FOCA and that he provided it to the interviewing agents. Provide a copy of this report.

44. Daveed Gartenstein-Ross appears to have provided the government with emails regarding communication between himself and Soliman Al Buthe. Provide copies of the emails.

45. All forensic reports prepared by the government and reflecting all government activity with respect to all computers and electronic media seized from Mr. Sedaghaty, Al Haramain, the Qu'ran Foundation, Data Pact, Midway Networks, Datta Grover, The Arborist, and other computer web server businesses, and any other entities with whom Mr. Sedaghaty was connected. While the government is providing copies of the electronic media, Mr. Sedaghaty needs to know what forensic investigation was conducted and the results.

46. All information regarding the computer or server from which the alleged Osama Bin Laden email that has been utilized in the detention/release process was derived. This includes the results of any government investigation into the origin and bona fides of the email.

47. All reports and records of surveillance of the Al Haramain building and Mr. Sedaghaty's residence conducted at any time. A number of people have described being aware of video surveillance of those entities and visually sighted the camera.

48. The page numbered government 295 on the top right indicates that it is page 15 of 43. The page numbered government 296 is labeled page 43 of 43. Provide the missing pages, 1-14 and 16-42 in this sequence.

49. Pages 387 through 389 are labeled on the top right pages 10, 11, and 12 of 18. Provide pages 1-9 and 13-18 in this sequence.

50. Page 16 of discovery in paragraph 4 references an attachment 2. Provide attachment 2.

51. Pages 164 through 165 of the discovery refer to an interview with an individual at the mailstop. Provide reports of all such interviews and other information and material obtained from the mail facility.

52. Page 165 of the discovery refers to information obtained from UNICOM. Provide all information obtained from UNICOM.

53. Page 165 of the discovery refers to information obtained from Qwest. Provide all information obtained from Qwest.

54. IRS Agent Anderson has advised that the government decrypted one file that was obtained from Mr. Sedaghaty during the search. State which agency is currently in possession of the file, and which agency performed the decryption. Provide all reports on the decryption of the file.

55. Provide all reports on the opening, tracing, or in any other way engaging in surveillance of mail delivered to Pirouz Sedaghaty, Al Haramain USA, the Qu'ran Foundation, The Arborist, and any other business entities with whom Mr. Sedaghaty was associated, either at their business or residence address, or any mail stop, or other postal or private mail service.

56. Provide all reports on the seizure and search and/or investigation of the computer possessed by Summer Rife on her entry into the United States in the summer of 2008.

57. Provide all information in the possession of the United States government[1] regarding communications between Russia and Saudi Arabia or Russia and the United States or Saudi Arabia and the United States or any other country regarding communications between Russia and Saudi Arabia regarding the Saudi Joint Relief Committee (SJRC).

58. Provide all information in the possession of the United States regarding contact by Canadian authorities and Lili (Lilly) Zahedi in the years 2000 through 2002 that involved any communication regarding Pirouz Sedaghaty.

59. Provide all records regarding all monetary payments made by the United States or affiliated with the United States government, to any entity, agency or employer with whom Daveed Gartenstein-Ross is or has been associated.

60. Provide a copy of all FBI and other agency interviews of Daveed Gartenstein-Ross regarding his activities and provision of information to the United States and any effort by him to obtain any security clearance and any investigation of Daveed Gartenstein-Ross regarding any security clearance.

61. Provide all reports of interviews or efforts to interview Summer Rife and Laleh Zahedi by any agent of the United States government.

---

[1] All places in this pleading where the terms "the United States, United States government, or United States governmental agency" are used refer to any entity, agency, agent, employee of the United States whether within or outside the Departments of Justice and Treasury, wherever located.

Page 13    SUPPLEMENT TO FIRST MOTION FOR DISCOVERY

62. Provide all records in the possession of the United States regarding contacts made by Pirouz Sedaghaty with the United States Department of State or any other United States government agency regarding his efforts to provide relief or aid of any type or have any type of contact with the government of Israel, any Palestinian refugees or Palestinian entities, Russia, Saudi Arabia, the SJRC, and any reports prepared by any agent or employee of the United States government about any such contacts.

63. Provide all reports, documentation, and information in the possession of the United States regarding any inspection, seizure, temporary seizure of any material shipped from the United States by Pirouz Sedaghaty, Al Haramain, USA, or the Qu'ran Foundation or shipped to Pirouz Sedaghaty, Al Haramain, USA, or the Qu'ran Foundation.

64. Provide all records of investigation efforts by the United States into the suspicious activity that was reported by Pirouz Sedaghaty to the Federal Bureau of Investigation in August and September 2001, including all investigation into, and information about the, individuals whose names were associated with that illegal activity.

65. Provide all information in the possession of the government regarding the deposit and subsequent movement of $21,000 into or out of any bank account related to Soliman Al Buthe, Al Haramain USA, or Al Haramain Saudi Arabia, including all information provide to the government from Tom Nelson.

66. Provide reports of the contacts between FBI Agent Charles Matthews and Pirouz Sedaghaty.

67. Provide all reports of all contacts by the United States with David Berger.

68. Provide all statements, reports on, copies of, notes about, and emails, tapes, forensic or other reports from any governmental agency or person of statements made by Pirouz Sedaghaty orally, electronically, in writing, or in any other form. In light of the government's letter of March 14, 2008, we note that all statements of the defendant are discoverable, whether made before or after arrest pursuant to Fed.R. Crim. P. 16(a)(1)(A) and (B) and (i), (ii), and (iii),  Moreover, as described above, virtually all statements, in whatever form, by Mr. Sedaghaty that are in the possession or the government are exculpatory in the context of this prosecution.

69. Provide all information and all files of the United States regarding Pirouz Sedaghaty, including but not limited to all work by Pirouz Sedaghaty with and for Al Haramain, the Al Haramain charity in any of its branches, the Qu'ran Foundation, efforts to assist Muslims in any place in the world in any form, efforts to assist any refugees or victims of conflict in any place in the world in any form, and all records that demonstrate a prolonged period and pattern of activity by Pirouz Sedaghaty that is oriented toward peace, ecumenical work, charitable work, and does not involve support for or assistance to any person or entity involved, or believed to be involved, in any terrorist or mujahideen activity.

70. State whether Pirouz Sedaghaty, Al Haramain USA, Qu'ran Foundation, and any employees of any of those entities were, at any time, subjected to surveillance or other investigation by: a) the use of Article III warrants in addition to that one previously disclosed; b) activity under the FISA; c) the Patriot Act; d) National Security letters; e) the TSP; f) or any other governmental activity not authorized pursuant to any judicial warrant; g) any activity authorized pursuant to the directive of the Attorney General or

any of his delegates or any government, person, or entity. If yes, provide all details regarding the activity including any warrant applications, warrants, items such as National Security letters, subpoenas, letters, other directives, and the like, all reports, in whatever form or format of the fruits of such activity, and all reports, law enforcement and intelligence or otherwise, prepared by any government, person, agency, or entity.

71. Provide all forms, documents, and reports, on the movement of travelers checks into or out of the United States by Soliman Al Buthe from 1995 to the present.

72. Provide all information received by the government from the United States Pre-trial services agency for the district of Oregon.

73. State whether any phone calls were recorded while Mr. Sedaghaty was incarcerated in the Lane County jail. If yes, provide copies of all calls.

74. State whether the United States government communicated with the Iranian, Saudia Arabian, Syrian, or other governments about Mr. Sedaghaty while he was overseas. If yes, provide copies and reports of all such communications.

## IV.   CONSIDERATIONS IN DISCOVERY OF CLASSIFIED INFORMATION

As noted above, records produced in two civil cases involving Al Haramain USA strongly suggest that the FISA, Patriot Act, National Security letters, TSP, and potentially other programs as well, were used to gather evidence at least as to Al Haramain and Soliman Al Buthe, and most likely as to Mr. Sedaghaty as well. Also, as noted above, Mr. Sedaghaty believes that any information obtained about him through FISA would be material to the defense and exculpatory.[2]

---

[2] This motion applies to any and all uses of the FISA in addition to non-FISA activity. The FISA permits electronic surveillance (50 U.S.C. §§ 1801-11); physical searches (50 U.S.C. §§ 1821-29); pen registers and trap and trace devices (50 U.S.C.

The fact that some of the information sought through discovery is classified in no manner limits the government's obligations under the Due Process Clause, caselaw, or Federal Rules of Criminal Procedure. Mr. Sedaghaty is entitled to all the material he needs for his defense. As stated in *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991), "Although the classified nature of many of the documents affects this court's assessment of defendant's request, the basic rule governing discovery of documents in the hands of the prosecution by a defendant is Federal Rule of Criminal Procedure 16(a)(1)(C) . . . .". *See United States v. Pickard*, 236 F.Supp. 2d 1204, 1209 (D. Kan. 2002); *United States v. Spanjol*, 720 F. Supp. 55, 57 (E.D. Pa. 1989).

The Court can fashion appropriate protective orders and other procedures to ensure no harm to national security from the disclosure of classified information. Fed. R. Crim. P. 16(d). In addition to the authority set out in the Federal Rules of Criminal Procedure, Congress has provided guidance in the Classified Information Procedures Act. 18 U.S.C. App. 3. CIPA is clearly applicable to the material the defense has placed in the SCIF. CIPA §§ 4-6. These sections provide guidance on discovery of classified information generally and when a defendant is in possession of classified information. Mr. Sedaghaty is entitled to full access to the material he caused to be placed in the SCIF (with appropriate security clearances) and to its use under appropriate protective orders. *See Armstrong v. Executive Office of the President, et al.*, 830 F. Supp. 19 , 22 (D.D.C. 1993) (the purpose of CIPA is to harmonize a criminal

---

§§ 1841-46); and access to certain business records (50 U.S.C. §§ 1861-62). While the sections regarding electronic surveillance are more fully discussed in his motion, the other sections of FISA involving the other types of surveillance may be applicable in this case as well. The concerns raised regarding the legality or illegality of surveillance that involves Mr. Sedaghaty are the same regardless of the type of surveillance used as provided in the FISA.

defendant's right to exculpatory material with the Government's right to protect classified information). The CIPA is likely to be relevant to the additional material the government provides pursuant to Mr. Sedaghaty's motions.

Respectfully submitted on March 17, 2008.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Larry Matasar
Larry Matasar