Mr. Kelly R. Beckley
kbeckley@beckley-law.com
Mr. Kevin W. Bons
kbons@beckley-law.com
BECKLEY LAW FIRM, P.C.
1257 High St., Suite #2
P. O. Box 11098
Eugene, OR 97440
Phone: (541) 683-0888
Fax: (541) 683-0889

Timothy J. Coleman
Boaz I. Green
*Pro hac vice pending*
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC  20005-4213
Telephone: (202) 346-8000
Facsimile:  (202) 346-8102

Attorneys for Respondent

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **PIROUZ SEDAGHATY** | ) **CR 05-60008-02-HO** |
| | ) |
| **Defendant** | ) |
| | ) **DECLARATION OF** |
| **In re AL RAJHI BANK SUBPOENA** | ) **TIMOTHY J. COLEMAN** |
| | ) |
| **AL RAJHI BANKING &** | ) |
| **INVESTMENT CORP,** | ) |
| **Real party in interest** | ) |
| **Respondent.** | ) |

Clients/Al Rajhi Banking& Investment
Corp/Declaration of T Coleman (08 FEB 10)

I, TIMOTHY J. COLEMAN, hereby declare and state as follows:

1.       I am a partner in the Washington, D.C. officer of the law firm of Dewey & LeBoeuf LLP, attorneys for Petitioner Al Rajhi Banking & Investment Corporation (the "Bank") in the above-captioned action.  I have personal knowledge of the matters stated below.  If called as a witness, I could and would testify competently thereto.  I submit this Declaration for the purpose of supplementing my previous declaration dated January 15, 2010, filed in support of the Bank's motion to quash the administrative subpoena dated July 17, 2009 (the "Subpoena"), filed in the United States District Court for the District of Columbia ("D.C. District Court") on January 19, 2010.  I also submit this Declaration for the purpose of putting before this Court the Bank's Reply Memorandum in Further Support of Its Motion to Quash USA PATRIOT Act Subpoena, filed in the D.C. District Court, today, February 8, 2010.

2.       During my discussions with Assistant United States Attorneys Christopher L. Cardani Charles F. Gorder Jr. they made it clear that, if the Bank did not comply with the Subpoena by the return date, the government would take action against the Bank by ordering the closure of its U.S. correspondent accounts.  At no point during my conversations with AUSAs Cardani and Gorder did they mention the possibility that the government would move to compel compliance with the Subpoena before it ordered the closure of the Bank's correspondent accounts.

3.       I informed AUSA Cardani, on at least two occasions, that the Bank was likely to move to quash the Subpoena in the D.C. District Court.

Declaration of Timothy J. Coleman – Page 2                    Clients/Al Rajhi Banking& Investment
                                                            Corp/Declaration of T Coleman (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

4.      On September 24, 2009, I informed AUSA Cardani that, in light of the Saudi Arabian Monetary Authority's instruction to the Bank that it may not comply with the Subpoena, the Bank was likely to move to quash in the D.C. District Court.

5.      On January 15, 2010, I informed AUSA Cardani that, in light of the government's threat to invoke Section 5318A, the Bank was seriously considering moving to quash the Subpoena and that it was likely to do so in the D.C. District Court.

6.      Attached as Exhibit A is a true and correct copy of the Bank's Reply Memorandum in Further Support of Its Motion to Quash USA PATRIOT Act Subpoena, filed in the D.C. District Court, today, February 8, 2010.

7.      Attached as Exhibit B is a true and correct copy of excerpts of the United States Department of Justice Asset Forfeiture Policy Manual (2008).

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 8, 2010                             Respectfully submitted,


                                                     /s/ Timothy J. Coleman
                                                    Timothy J. Coleman

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Al Rajhi Banking & Investment Corporation,<br>Al-Aqaria Building 3<br>Olaya Road, Riyadh<br>Saudi Arabia<br><br>     Petitioner,<br><br>  v.<br><br>ERIC H. HOLDER, JR.,<br>in his official capacity as Attorney General of<br>the United States,<br>950 Pennsylvania Avenue, NW, Room B-103<br>Washington, DC  20530-0001<br><br>TIMOTHY F. GEITHNER,<br>in his official capacity as Secretary of the<br>Treasury,<br>1500 Pennsylvania Avenue, NW<br>Washington, DC  20220<br><br>KENT S. ROBINSON,<br>in his official capacity as Acting United States<br>Attorney for the District of Oregon,<br>Portland District Office<br>1000 SW Third Avenue, Suite 600<br>Portland, Oregon  97204<br><br>   and<br><br>COLLEEN ANDERSON, in her official<br>capacity as Special Agent for the Internal<br>Revenue Service,<br>960 Ellendale, Suite A<br>Medford, Oregon  97504<br><br>     Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Misc. No. 1:10-mc-00055 (ESH)<br>)<br>)<br>)  **AL RAJHI BANKING AND**<br>)  **INVESTMENT CORPORATION'S**<br>)  **MEMORANDUM IN OPPOSITION TO**<br>)  **THE GOVERNMENT'S MOTION TO**<br>)  **DISMISS AND FOR OTHER RELIEF**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ................................................................................ 1

**STATEMENT OF FACTS** ...................................................................................... 3

**DISCUSSION** ...................................................................................................... 7

    I.    THIS DISTRICT IS A PROPER VENUE FOR THE ADJUDICATION OF THIS
           NON-PARTY SUBPOENA ENFORCEMENT PROCEEDING .................................... 7

    II.   THE GOVERNMENT HAS NOT MET ITS BURDEN OF ESTABLISHING THAT A
           TRANSFER, STAY, OR DISMISSAL WOULD BE APPROPRIATE FOR THIS PROCEEDING .... 12

        A.    The Government's Artificially Manufactured Venue Conflict Is Not A
               Justifiable Basis For Disregarding The Substantial Deference Afforded
               The Bank In Selecting An Appropriate Forum ...................................... 12

        B.    Non-Parties Are Entitled To Territorial Protection In Subpoena Enforcement
               Proceedings To Prevent Hardship ......................................................... 13

        C.    Both Private And Public Venue Considerations Weigh Heavily Against A
               Transfer, Stay, Or Dismissal Of These Proceedings ............................. 15

**CONCLUSION** .................................................................................................. 17

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Akiachak Native Cmty. v. Dep't of the Interior*,
  502 F. Supp. 2d 64 (D.D.C. 2007) .................................................................... 12, 15, 17

*Buchanan v. Manley*,
  145 F.3d 386 (D.C. Cir. 1998) ................................................................................. 11

*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) ................................................................................. 11

*FTC v. Owens-Corning Fiberglass Corp.*,
  626 F.2d 966 (D.C. Cir. 1980) ................................................................................... 9

*Gillson v. Vendome Petroleum Corp.*,
  35 F. Supp. 815 (E.D. La. 1940) ............................................................................... 8

*Greater Yellowstone Coalition v. Bosworth*,
  180 F. Supp. 2d 124 (D.D.C. 2001) ......................................................................... 13

*Greater Yellowstone Coalition v. Kempthorne*,
  No. 07-2111, 2008 U.S. Dist. LEXIS 33641 (D.D.C. Apr. 24, 2008) ..................... 13

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ................................................................................................. 13

*Harrison v. Lappin*,
  No. 05-5310, 2006 U.S. App. LEXIS 17554 (D.C. Cir. June 22, 2006) ................. 11

*ICC v. Brimson*,
  154 U.S. 447 (1894) ................................................................................................... 9

*In re Corrugated Container Antitrust Litig.*,
  662 F.2d 875 (D.C. Cir. 1981) ................................................................................. 13

*In re: Sealed Case No. 98-5062*,
  141 F.3d 337 (D.C. Cir. 1998) ........................................................................... 13, 14

*Int'l Painters and Allied Trades Indus. Pension Fund v. Painting Co.*,
  569 F. Supp. 2d 113 (D.D.C. 2008) ......................................................................... 12

*Islamic Republic of Iran v. Boeing Co.*,
  477 F. Supp. 142 (D.D.C. 1979) .............................................................................. 13

*ITC v. ASAT, Inc.*,
  355 F. Supp. 2d 67 (D.D.C. 2004) ........................................................................... 11

*Nat'l Wildlife Fed'n v. Harvey*,
  437 F. Supp. 2d 42 (D.D.C. 2006) ........................................................................... 13

- ii -

*Pain v. United Techs. Corp.,
   637 F.2d 775 (D.C. Cir. 1980) .................................................................................. 12

*S. Utah Wilderness Alliance v. Norton,
   No. 01-2518, 2002 U.S. Dist. LEXIS 27414 (D.D.C. June 28, 2002) ..................................... 16

Starnes v. McGuire,
   512 F.2d 918 (D.C. Cir. 1974) .................................................................................. 15

*Trout Unlimited v. U.S. Dep't of Agric.,
   944 F. Supp. 13 (D.D.C. 1996) ................................................................................. 16

United States v. Exxon Corp.,
   628 F.2d 70 (D.C. Cir. 1980) ..................................................................................... 9

United States v. Wilfred Am. Educ. Corp.,
   No. 86-333, 1987 WL 10501 (D.D.C. Apr. 23, 1987) ................................................... 8

Wash. Metro. Area Transit Auth. v. Ragonese,
   617 F.2d 828 (D.C. Cir. 1980) .................................................................................. 12

**S<small>TATUTES</small>**

28 U.S.C. § 1391 (2009) ................................................................................................... 8, 9

28 U.S.C. § 1404 (2009) .......................................................................................... 9, 12, 15

31 U.S.C. § 5318(k) (2009) ................................................................................... passim

31 U.S.C. § 5318A (2009) .......................................................................... 3, 6, 7, 11

**R<small>ULES</small>**

Fed. R. Civ. P. 45 ......................................................................................................... 13

EXHIBIT A
Page 4 of 21

Petitioner Al Rajhi Banking and Investment Corporation (the "Bank") respectfully submits this memorandum in opposition to the United States' motion to dismiss and for other relief.  In light of this Court's instruction to focus on the procedural points raised by the government in its filing, this memorandum does not further address the substance of the Bank's motion to quash.  The Bank respectfully requests an opportunity to address these points if the Court decides to rule on the merits of the Bank's motion to quash.[1]

## PRELIMINARY STATEMENT

This motion, which was filed _two weeks before_ the government initiated a parallel subpoena enforcement proceeding at the other end of the country, came after due notice was provided to the government on several occasions that the Bank was compelled to move in this Court to clarify its rights and responsibilities as a non-party placed in a precarious position by competing legal obligations.  The factual record in this proceeding demonstrates that the Bank has attempted to negotiate in good faith with the government for several months regarding the Bank's obligations under the subpoena (the "Subpoena") issued to it pursuant to the purported authority of 31 U.S.C. § 5318(k).  It was only as a last resort when faced with criminal sanctions at home and potential irreparable injury stemming from administrative actions taken by the government that the Bank filed this motion as a precautionary means to protect itself from imminent harm.  In light of the Government's rights under the Patriot Act statutes in question, which do not require the filing of a motion to compel or other judicial review before taking punitive administrative actions, the potential reputational and economic harm faced by the Bank was real and immediate.  Rather that respecting the strong presumption in this Circuit against

---

[1]    The Bank will respond on the merits in its opposition to the government's motion to compel filed in Oregon, but that opposition will be based on different burdens of proof and will focus on Ninth Circuit precedent.

disturbing the Bank's choice of forum, however, the government instead sought to exploit a venue conflict that was entirely of its own making.

Indeed, without supplying any relevant case law – but rather attorney argument purporting to interpret statutory authority – the government argues that this Court is not a proper venue for this subpoena enforcement proceeding, and that the Bank, as a non-party who is not charged or alleged to have been involved in any criminal activity, should bear the cost and inconvenience of litigating this discrete dispute alongside the main criminal action in Oregon. After manufacturing this venue dispute by initiating a competing subpoena enforcement proceeding one day before its opposition to this motion was due, the government now attempts to rely on similar statutes governing civil actions to argue for a change of venue that it derided as inapposite in its opposition.

Not only is this District the proper venue for the adjudication of this discrete dispute, but the government has not met its burden of proving that a stay or transfer of venue would be appropriate here in light of the substantial deference afforded the first-to-file petitioner in selecting an appropriate venue, the territorial protection afforded non-parties in subpoena enforcement proceedings, and the overwhelming weight of both private and public factors implicated in a venue transfer motion. Accordingly, the Bank respectfully requests that this Court deny the government's request to dismiss, transfer, or stay this subpoena enforcement proceeding and exercise its discretion to decide on the merits of the Bank's motion to quash.

EXHIBIT A
Page 6 of 21

## STATEMENT OF FACTS

On January 19, 2010, the Bank filed its motion to quash an administrative subpoena issued by the Acting United States Attorney for the District of Oregon, with the approval of Main Justice officials in Washington, D.C., under the purported authority of 31 U.S.C. § 5318(k).[2]  Nearly two weeks after the Bank filed this motion, the government filed its own motion to compel in the United States District Court for the District of Oregon.  The government's motion attempted to rebut the points raised by the Bank in its motion to quash.  A day later, having manufactured a conflict between two federal courts on opposite ends of the country, the government filed its opposition with this Court.

As demonstrated by the timeline below, the Bank agreed to the government's numerous unilateral extensions and operated under the threat of the Subpoena and sanctions under § 5318(k) without seeking judicial intervention for almost six months.  It was not until the government threatened to take administrative action pursuant to 31 U.S.C. § 5318A, a different Patriot Act provision, to pressure the Bank into turning over the requested documents, in violation of Saudi law, that the Bank was compelled to seek judicial protection.

On August 18, 2009, the Bank's counsel spoke with the government and requested a 30-day adjournment of the return date for the Subpoena to provide additional time to determine whether the Bank would comply with or contest the Subpoena.  The government agreed to the adjournment.  During the course of the Bank's discussions with the government, the government made it clear that, if the Bank did not comply with the Subpoena by the return date, the government would take action against the Bank by ordering the closure of its U.S. correspondent

---

[2]       *See* Ex. B to Gov't Opp., Office of the Attorney General Order No. 2860-2007, *Delegation of Authority to Issue a Summons or Subpoena to any Foreign Bank that Maintains a Correspondent Account in the United States*, dated January 18, 2007 (providing that the delegation of the authority to United States Attorneys to issue administrative subpoenas pursuant to § 5318(k) is subject to approval by the Criminal Division at Main Justice in Washington, D.C.)

- 3 -

accounts.  At no point during these conversations did the government mention the possibility that it would move to compel compliance with the Subpoena before it ordered the closure of these correspondent accounts.  (Declaration of Timothy J. Coleman, sworn to February 8, 2010 ("Coleman Decl. II"), ¶ 2.)  Accordingly, the Bank faced two separate and imminent threats of irreparable harm pursuant to §§ 5318(k) & 5318A, which ultimately compelled the Bank to initiate this proceeding to ensure that the government's actions would be subject to prior judicial review.

Then, on September 22, 2009, the Bank's counsel advised the government that the Bank was awaiting guidance from the Bank's primary regulator, the Saudi Arabian Monetary Authority ("SAMA"), concerning the Subpoena, and requested a further 30-day adjournment of the return date.  The government agreed to the adjournment.  This was the second and final adjournment requested by the Bank.  (Declaration of Timothy J. Coleman, sworn to January 15, 2010 ("Coleman Decl. I"), ¶¶ 11-12.)

On September 23, 2009, the Bank's counsel received a copy of a letter to the Bank from SAMA informing the Bank that it was prohibited from complying with the Subpoena and would risk criminal prosecution in Saudi Arabia, resulting in imprisonment and/or fines, if it complied. The letter informed the Bank that the proper form for the United States to request the documents was through a letter rogatory and that SAMA would not allow the Bank to comply with a request made through an administrative subpoena.  SAMA instructed the Bank to inform the United States authorities of SAMA's position.  On September 24, 2009, the Bank's counsel forwarded that letter to the government, together with a letter from the Bank to SAMA dated September 1, 2009.  (Coleman Decl. I ¶ 13.)

Also on September 24, 2009, almost three months before the Bank finally moved to quash the Subpoena, the Bank's counsel spoke with the government, and advised it that, in light of SAMA's instructions to the Bank, it was likely that the Bank would move to quash the Subpoena, and that it would likely do so in federal court in Washington, D.C.  (Coleman Decl. II ¶ 3.)  In that conversation, the government stated that it had attempted to obtain the documents called for by the Subpoena through a request to the government of Saudi Arabia.  The government did not tell the Bank's counsel the nature of that request.  The Bank's counsel suggested to the government that, in light of SAMA's view that the documents should be requested by means of a letter rogatory, the government should consider submitting such a letter. (Coleman Decl. I ¶ 13.)

On October 23, 2009, the Bank's counsel had a further conversation with the government, during which the government stated that it was granting a further adjournment of the Subpoena's return date.  This adjournment had not been requested by the Bank.  The Bank's counsel in fact told the government that the Bank was not requesting any further adjournment, and that the Bank might move to quash the Subpoena despite the extension.  On October 26, 2009, the Bank's counsel received an email from the government stating that the return date was adjourned to November 30, 2009.  (Coleman Decl. I ¶ 14.)

On November 9, 2009, the Bank's counsel spoke with the government, including an attorney in the Department of Justice's Office of International Affairs in Washington, D.C. ("OIA").  During that call, the government represented that it had not submitted a letter rogatory seeking the documents at issue, but had made a request to the Saudi government to produce those documents pursuant to the International Convention for the Suppression of the Financing of Terrorism.  The Bank's counsel offered to assist the government by making inquiries in Saudi

- 5 -

Arabia regarding the treaty request.  To that end, the Bank's counsel also requested that the government provide him with documentation, such as diplomatic cable traffic, of the treaty request the government had made previously.  The Bank's counsel also reiterated its previous suggestion that the government should consider seeking the documents through a letter rogatory, as required by Saudi domestic law, and offered to assist the government by working with the Bank to process such a request expeditiously.  (Coleman Decl. I ¶ 15.)

On November 23, 2009, the Bank's counsel received an email from the government, stating that OIA was working with the Department of State to determine whether the information he requested could be provided, and that he was therefore extending the subpoena return date to December 30, 2009.  Once again, this extension of time was not requested by the Bank. (Coleman Decl. I ¶ 16.)

On December 23, 2009, the government informed the Bank's counsel that the government would not provide the information the Bank had requested.  The government stated that it was considering various options in connection with the Subpoena.  The government stated that some of those options would adversely affect the Bank, and specifically cited a provision of the USA PATRIOT Act, 31 U.S.C. § 5318A.  That section of the Act enables the government to brand a financial institution as a terrorist financing organization and take crippling actions against the institution without prior judicial authorization or review.  The government also informed the Bank's counsel that it was extending the subpoena return date to January 29, 2010. Once again, this extension had not been requested by the Bank.  (Coleman Decl. I ¶ 17.)

Finally, on January 15, 2009, the Bank's counsel spoke with the government and stated that if the government initiated a proceeding under § 5318A, the Bank would be irreparably harmed.  The Bank's counsel requested that the government agree to provide the Bank with

EXHIBIT A
Page 10 of 21

advance notice of any such proceeding.  The government did not agree to that request.  The

Bank's counsel informed the government that the Bank was concerned over the government's

threat to retaliate against the Bank by invoking § 5318A and that the Bank was therefore

considering filing a motion to quash the Subpoena and that it would likely not be able to give the

government prior notice of the filing.  (Coleman Decl. I ¶ 18.)  The Bank again confirmed that, if

it moved to quash the Subpoena, it would do so in Washington, D.C.  (Coleman Decl. II ¶ 3.)

## DISCUSSION

I.    **This District Is A Proper Venue For The Adjudication Of This Non-Party
      Subpoena Enforcement Proceeding**

As demonstrated by the foregoing, the Bank has consistently and repeatedly operated in

good faith in its negotiations with the government to reach a compromise solution that would not

subject the Bank to having to choose between severe sanctions in Saudi Arabia and irreparable

economic harm arising from actions taken by the government.  Indeed, because § 5318(k) gives

the government the power to close the Bank's correspondent accounts without seeking judicial

enforcement of the Subpoena, it was imperative for the Bank to move in this Court to protect its

interests.  Because the government is not required under the statute to first move to compel the

Subpoena, had the Bank waited for the government to take administrative action it may well

have been too late to prevent irreparable harm.  Indeed, the initiation of the government's

enforcement action in Oregon was spurred only by the Bank's decision to file first in this Court.

In response to the initiation of this proceeding, the government now argues that venue is

improper in this District, and that the Bank, as a non-party to the main criminal proceeding,

should be forced to litigate this discrete dispute at the other end of the country.  The Bank

respectfully submits that this argument is meritless.  The administrative subpoena statutes cited

by the government in its opposition contain explicit venue requirements not found in § 5318(k),

- 7 -

the underlying statute from which this Subpoena purportedly derives.  Rather, § 5318(k) does not delineate a specific venue for the initiation of the related subpoena enforcement proceedings, and certainly does not provide that such proceedings must be held where the investigation or primary criminal action is taking place.

In the absence of an explicit statutory venue requirement, general principles of federal court venue apply.  Courts in this Circuit have interpreted such general provisions regarding venue in analogous administrative subpoena enforcement proceedings as providing for venue in any district court "of competent jurisdiction."  *See, e.g., United States v. Wilfred Am. Educ. Corp.*, No. 86-333, 1987 WL 10501, *5 (D.D.C. Apr. 23, 1987) (interpreting venue provision for administrative subpoena enforcement proceedings brought under Inspector General Act of 1978).  Here, by filing in this Court, the Bank was neither attempting to unfairly prejudice the government through unfair surprise nor gain a litigation advantage by engaging in forum shopping to utilize favorable precedent in this District.  Indeed, the Bank informed the government on several prior occasions that it was contemplating filing a discrete subpoena enforcement proceeding in this Court to protect its interests.  Moreover, as explained in greater detail below, there are several compelling reasons to commence an action in this District.

In opposition, the government argues only that this administrative subpoena enforcement proceeding is not a "civil action" under 28 U.S.C. § 1391 – a proposition for which it offers no case law support.  As courts in this and other circuits have made clear, however, the term "civil action" is construed extremely broadly.  *See, e.g.*, *Gillson v. Vendome Petroleum Corp.*, 35 F. Supp. 815, 819 (E.D. La. 1940) ("The term 'civil action' embraces, from its natural import, every species of 'suit' not of a criminal kind, and comprehends every conceivable cause of action, whether legal or equitable, except such as are 'criminal,' in the sense that the judgment may be a

- 8 -

fine or imprisonment.").  Accordingly, this subpoena enforcement proceeding should be deemed

an independent civil action for purposes of § 1391.  *See United States v. Exxon Corp.*, 628 F.2d

70, 77 (D.C. Cir. 1980) ("[T]he enforcement of a subpoena is an independent judicial action, and

not merely an action ancillary to an earlier agency action.") (citing *ICC v. Brimson*, 154 U.S. 447

(1894)); *see also FTC v. Owens-Corning Fiberglass Corp.*, 626 F.2d 966, 983 (D.C. Cir. 1980).

Moreover, the government's hypertechnical interpretation of the statute is further belied by its

reliance upon 28 U.S.C. § 1404, which specifically provides that a district court may transfer *any*

*civil action* for the convenience of parties and witnesses or in the interest of justice.

  The reasons that venue is appropriate in this Court are many.  First, as explained in

greater detail in the next section, non-parties contesting subpoenas are afforded considerable

protection from being forced to litigate subpoena-related disputes in inconvenient locations.

Thus, the fact that the Bank's counsel is located in Washington, D.C. and its effort and expense

are less burdensome in commencing an action in this Court is an eminently reasonable

justification for selecting this venue.  Now that the Oregon court has scheduled an expedited

hearing on the government's motion to compel on February 16, the Bank will be required to send

counsel to Eugene, Oregon at considerable additional expense.  Furthermore, the government's

argument that it would face a greater burden by being forced to litigate in this Court rather than

Oregon constitutes considerable overreaching for several reasons.  The government has staff in

Washington, D.C. who has been involved in every facet of the discrete Patriot Act subpoena

dispute and is familiar with the underlying facts and legal issues.  Unlike the Bank, the

government does not need to retain local counsel or take on the time and expense of moving *pro*

*hac vice* before this Court.[3]  In addition, the respondents and Main Justice attorneys involved in

---

[3]  Contrary to the government's protestations (Opp. 7), the Bank's counsel, Dewey & LeBoeuf
LLP, has no Oregon offices and no attorneys with active Oregon licenses.

EXHIBIT A
Page 13 of 21

the decision-making process surrounding the issuance and enforcement of the Subpoena are all located in Washington, D.C.  Furthermore, the Department of Justice's Criminal Division Section ("Criminal Division"), who is responsible for the enforcement of the Patriot Act provisions in question, is also located in Washington, D.C.  Finally, the Bank – as a non-party – previously had not litigated any issues in the main criminal action in Oregon and had not retained local counsel or entered an appearance before being forced to do so last week to oppose the government's duplicative filing.

Second, not only are the primary decision-making respondents located in this District, but all key decisions surrounding the issuance and subsequent enforcement of the Subpoena are made in Washington, D.C.  Specifically, § 5318(k) gives the Attorney General and the Secretary of the Treasury ("Secretary") the authority to issue summonses and subpoenas to foreign banks, and to order domestic banks to close correspondent accounts if the foreign banks neither comply with nor challenge the subpoenas.  Importantly, this latter authority to close correspondent accounts does not appear to have been delegated, as the provision specifically requires that the Attorney General and Secretary consult with one another before issuing such orders.  Accordingly, both the Attorney General and the Secretary were proper respondents to this subpoena enforcement proceeding, and thus venue properly lies for the reasons articulated in the Bank's motion.  In addition, although the authority to issue the Subpoena in the first instance may have been properly delegated to the United States Attorney for the District of Oregon, as explained in detail in the Bank's motion to quash, the exercise of this delegated right requires pre-approval by the Criminal Division in Washington and the government's internal policy manuals confirm the fact that approval first must be obtained from OIA and the government's Asset Forfeiture and Money Laundering Section ("AFMLS").  (*See* Ex. A to Coleman II Decl. at

- 10 -

App. I-2) (providing that AFMLS must give approval before summonses or subpoenas can be issued to obtain records from foreign banks that maintain correspondent accounts in the United States.)

Third, the decision by the Secretary to exercise the authority granted to him under the USA PATRIOT Act, 31 U.S.C. § 5318A, for which the Bank seeks injunctive relief, would need to be made in Washington and implemented by the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"), which is also located in Washington, D.C.

Finally, as confirmed by counsel for the Bank's call with OIA and explained in greater detail in the Bank's motion and accompanying affidavits, the decision not to issue a letter rogatory to the Kingdom of Saudi Arabia was made by Main Justice officials in Washington, D.C.

Accordingly, given the strong nexus to this District resulting from the government's decision to issue the Subpoena to the Bank and its associated enforcement powers under both relevant provisions, venue is appropriate in this case. *Cf. ITC v. ASAT, Inc.*, 355 F. Supp. 2d 67, 71 (D.D.C. 2004) (holding under analogous circumstances involving a Department of Energy administrative subpoena that, because the central headquarters and the officials ultimately responsible for the control and direction of the investigation, the decision to issue the subpoena, and the decision to seek the subpoena's enforcement were all located in Washington, D.C., venue was appropriate in this District).[4]

---

[4] A dismissal for lack of venue would be reviewed *de novo*, while a decision to stay or transfer an action would be reviewed for an abuse of discretion by an appellate court. *See, e.g., Buchanan v. Manley*, 145 F.3d 386, 389 & n.6 (D.C. Cir. 1998); *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993); *Harrison v. Lappin*, No. 05-5310, 2006 U.S. App. LEXIS 17554, *2 (D.C. Cir. June 22, 2006). Regardless of the applicable standard, however, the overwhelming weight of the relevant considerations in this case in deciding to dismiss, stay, or transfer this proceeding militates strongly against granting the government's requested relief.

EXHIBIT A
Page 15 of 21

II.    **The Government Has Not Met Its Burden Of Establishing That A Transfer, Stay, Or Dismissal Would Be Appropriate For This Proceeding**

A.  **The Government's Artificially Manufactured Venue Conflict Is Not A Justifiable Basis For Disregarding The Substantial Deference Afforded The Bank In Selecting An Appropriate Forum**

As the moving party, the government bears the burden of proof in establishing that a transfer of venue pursuant to 28 U.S.C. § 1404 would be appropriate in this case. *Akiachak Native Cmty. v. Dep't of the Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007). The government's primary argument in support of its motion for a transfer of venue is that a parallel subpoena enforcement proceeding is pending in Oregon, and thus the Bank may utilize that forum to advance its positions. This contention, however, fails to acknowledge that this is a false venue conflict manufactured solely by the government's decision to bring the parallel proceeding *two weeks after* the Bank filed this motion and on the eve of filing its opposition. Accordingly, it should not be rewarded for exploiting a conflict that was entirely of its own making in violation of the "strong presumption" in this and other circuits against disturbing the plaintiff or petitioner's initial forum choice. *See Pain v. United Techs. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980); *Int'l Painters and Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 116 (D.D.C. 2008) ("Where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is allowed to proceed to its conclusion first.") (quoting *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980)). Notably, the Bank is not a party to the main criminal action in Oregon.

Although this first-to-file rule is not mechanically applied in this District, courts have counseled that "a case should not be transferred from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Nat'l*

- 12 -

*Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2006).  In deciding whether to disrupt

the plaintiff's choice of forum, the Supreme Court has observed that "unless the balance is

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Accordingly, courts have typically decided

to override the plaintiff's choice of forum only when there are no meaningful ties to the forum

and specific facts call into question the plaintiff's choice.  *See Greater Yellowstone Coalition v.*

*Kempthorne*, No. 07-2111, 2008 U.S. Dist. LEXIS 33641, *10-11 (D.D.C. Apr. 24, 2008);

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001); *Islamic*

*Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979).

Here, as explained in great detail in the preceding section, there are several compelling

reasons why the Bank commenced this action in this Court and why venue properly lies in this

District.

### B.  Non-Parties Are Entitled To Territorial Protection In Subpoena Enforcement Proceedings To Prevent Hardship

In analogous subpoena enforcement proceedings brought under Fed. R. Civ. P. 45, non-

parties to whom subpoenas are directed are afforded territorial protections to challenge the

validity or enforceability of the subpoenas.  As courts in this Circuit have recognized, such

protections are afforded "to spare the non-party witness the inconvenience and hardship of

traveling to a distant forum in order to defend himself."  *In re Corrugated Container Antitrust*

*Litig.*, 662 F.2d 875, 881 (D.C. Cir. 1981).  Indeed, such protections are upheld even when the

trial court in which the primary action is pending is arguably better equipped to handle the

resolution of such disputes.  *In re: Sealed Case No. 98-5062*, 141 F.3d 337, 341 (D.C. Cir. 1998)

("It may well be true, as respondent suggests, that the trial court will be better able to handle

discovery disputes.  But Congress in the Rules has clearly been ready to sacrifice some

- 13 -

efficiency in return for territorial protection for nonparties.").  In fact, the D.C. Circuit has refused to recognize the right of a respondent to transfer a motion to quash a subpoena in cases governed by Rule 45.  *Id.* at 343.

Here too, as an analogous proceeding involving an administrative subpoena directed to a non-party to aid in the procurement of evidence for use in a main action, the government should not be able to unilaterally strip the Bank of the protections afforded non-parties in subpoena enforcement proceedings.  By bringing this action, the Bank seeks not to gain a litigation advantage or obtain special treatment; rather, it seeks only to avail itself of the right to bring a discrete miscellaneous subpoena enforcement proceeding in a convenient forum to avoid undue hardship and expense.  The reason for seeking such protection derives from the fact that the Bank has significant ties to Washington, D.C. and no ties to Oregon.  For example, the Bank has a longstanding relationship with its counsel, Dewey & LeBoeuf, whose largest U.S. offices are in New York and Washington, D.C.  In addition, its U.S. business relationships, including its correspondent accounts, are located primarily on the East Coast.  Thus, it is more expensive and burdensome to require the Bank to litigate in Oregon – particularly when the government has not shown any connection between the Bank and Oregon – given the higher costs of travel and local counsel.  In light of these considerations, the Bank respectfully requests that this Court deny the government's request for a stay, transfer, or dismissal of this discrete dispute.

### C.  Both Private And Public Venue Considerations Weigh Heavily Against A Transfer, Stay, Or Dismissal Of These Proceedings

The primary underlying purpose of § 1404 is to afford a defendant (or respondent in this case) protection when a plaintiff's chosen forum would make litigation oppressively expensive, inconvenient, difficult, or harassing to defend.  *See Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974).  Here, the government cannot begin to demonstrate oppressive expense, inconvenience, difficulty, or harassment in being required to litigate this dispute in this Court. Accordingly, given the relative resources of the government and the Bank, concentration of the primary respondents and their counsel in this District, the fact that this proceeding predates the Oregon proceeding, and the strong nexus of this discrete action and accompanying enforcement proceedings to Washington, D.C., the government cannot meet its burden of proving that a transfer of venue is warranted in this case.

In analyzing a change of venue request under § 1404, courts in this District have been instructed to evaluate a mixture of both private and public factors.  The six private factors considered most often are:

(1)    The plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant;
(2)    The defendant's choice of forum;
(3)    Whether the claim arose elsewhere;
(4)    The convenience of the parties;
(5)    The convenience of witnesses; and
(6)    The ease of access to sources of proof.

*Akiachak*, 502 F. Supp. 2d at 67.  The Bank respectfully submits that an analysis of all six factors can lead to only one conclusion: the government has not met its burden of proving that a transfer of venue is appropriate.  With respect to the first two factors, as explained above, the Bank's original choice of forum in this Court – a decision grounded on several compelling reasons –

- 15 -

should ordinarily not be overridden absent the lack of any nexus to the chosen forum, which certainly has not been demonstrated here.

With respect to the next four factors, the government argues that the fact that the underlying criminal proceedings are in Oregon should be the dispositive factor in this Court's analysis. However, the fact that the alleged conduct in the underlying criminal case occurred elsewhere – conduct for which the Bank, as a non-party, has not been charged – has no bearing on this Court's ability to decide this discrete legal dispute. Similarly, because the relevant facts are not in dispute and the adjudication of the enforceability of the Subpoena will turn on a resolution of legal issues, considerations of the convenience of witnesses and the ease of access to sources of proof are also irrelevant. No other witnesses, evidence, parties, or proceedings are required. *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 18 (D.D.C. 1996) ("The convenience of witnesses in this case has less relevance because this case involves judicial review of an administrative decision and accordingly, all existing parties have stipulated that neither discovery, witnesses, nor a trial will be required."); *S. Utah Wilderness Alliance v. Norton*, No. 01-2518, 2002 U.S. Dist. LEXIS 27414, *13 (D.D.C. June 28, 2002) (finding that the availability and convenience of witnesses factors are not implicated when no witnesses are required). Accordingly, that the Subpoena was issued to collect evidence for the Oregon criminal case does not make the facts of that case relevant to whether or not the Subpoena is valid and enforceable. Therefore, consideration of the six private factors weighs heavily in favor of the Bank in this proceeding.

Courts in this district also look frequently to three public factors:

(1)     The transferee court's familiarity with the governing laws;
(2)     The relative congestion of the calendars of the two courts; and
(3)     The local interest in deciding local controversies at home.

- 16 -

*Akiachak*, 502 F. Supp. 2d at 67.   Here, too, a consideration of these factors militates strongly in favor of the Bank's position.  Because the underlying subpoena enforcement dispute centers on the interpretation of federal rather than state or foreign statutes, both courts are presumed to be well-equipped to adjudicate the issue – and this Court in particular has considerable familiarity with Patriot Act enforcement proceedings.  In addition, there is no local interest in deciding the underlying legal dispute implicated in this action.  Accordingly, the public factors also cannot assist the government in meeting its burden of proving that a transfer, stay, or dismissal is warranted for this subpoena enforcement action.

## CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court deny the government's request to dismiss, transfer, or stay this subpoena enforcement proceeding and exercise its discretion to decide on the merits of the Bank's motion to quash the Subpoena.


Dated:  February 8, 2010                         Respectfully submitted,


                                                 /s/ Timothy J. Coleman
                                                 Timothy J. Coleman (D.C. Bar No. 436415)
                                                 DEWEY & LEBOEUF LLP
                                                 1101 New York Avenue, NW
                                                 Washington, DC  20005-4213
                                                 Telephone: (202) 346-8000
                                                 Facsimile:  (202) 346-8102

                                                 ATTORNEYS FOR PETITIONER

*Of Counsel:*
Boaz I. Green    (D.C. Bar No. 977520)
John K. Warren (D.C. Bar No. 982338)

# Foreword

This is the *Asset Forfeiture Policy Manual*, published by the Asset Forfeiture and Money Laundering Section of the United States Department of Justice. It replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives and Interim Legal Advice Memoranda issued prior to October 2007.

Since 2005, the *Asset Forfeiture Policy Manual* has been available in two formats: the hardcopy format set forth in this publication, and an electronic format available to the federal law enforcement community on the Asset Forfeiture and Money Laundering Section's intranet Web site. As changes are made to the published version of the *Manual*, they will appear first in the electronic version, as the costs of production make it impractical to revise and republish the hardcopy version more often than once a year even if substantial changes have been made to the text. Accordingly, users of the *Manual* in the federal law enforcement community are encouraged to check the electronic version for the current text of all policies. Changes from the hardcopy version will be flagged on the website to make them easy to identify.

This edition of the *Policy Manual* contains new policies worth mentioning. Chapter 6, on equitable sharing, has been revised and expanded and contains new material. Chapter 1 contains a new section on general adoption policy and procedure. Chapter 2 includes new material on the deadline for filing a civil forfeiture action in cases that do not begin as administrative proceedings, and sets forth new policy on Internet publication of notice of the order of forfeiture in criminal cases. Chapter 12 has a new section that covers ethical issues that may arise in connection with parallel civil and criminal forfeiture proceedings. The Asset Forfeiture and Money Laundering Section anticipates that the process of revising each of the chapters of the *Manual* will continue until next issue is printed in 2009.

Some topics that require extended treatment are not addressed in this *Manual* because they are addressed at length in stand-alone publications. *See, e.g.*, *A Guide to the Collection of Criminal Forfeiture Money Judgments* (2005); *A Guide to Interlocutory Sales and Expedited Settlements* (2003), *Financial Investigations Guide* (1998), and *A Guide to Equitable Sharing* (1994). This *Manual* supplements but does not supersede the policies set forth in those publications.

The *Asset Forfeiture Policy Manual* sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend that the following format be used for citing this *Manual*: *Asset Forfeiture Policy Manual* (2008), Chap. __, Sec. __.__. (*e.g.* Chap. 1, Sec. I.A).

Richard Weber
Chief
Asset Forfeiture and Money Laundering Section

*Asset Forfeiture Policy Manual (2008)*

| Topic | Requirement | Reference |
|-------|-------------|-----------|
| Correspondent Accounts | *AFMLS* must give approval before serving a restraining order, seizure warrant, or warrant of arrest on a correspondent bank account under 18 U.S.C. § 981(k) (chief of AFMLS will get concurrence from director of OIA) | Memorandum from AAG Chertoff<br>USA Patriot Act, Section 319, codified at 18 U.S.C. § 981(k) |
| Correspondent Accounts | *AFMLS* must give approval before the *AAG* can issue summonses or subpoenas to foreign banks that maintain correspondent accounts in the United States to get records (chief of AFMLS will get approval from OIA as well) | Memorandum from AAG Chertoff<br>AG order delegating authority to AAG<br>USA Patriot Act, Section 319, codified at 31 U.S.C. § 5318(k) |
| Deposit of Seized Cash | *AFMLS* must give approval for exceptions to the policy requiring prompt deposit of any seized cash into the Seized Asset Deposit Fund (delegated by AAG) unless the seized cash is less then $5,000. | Policy Manual Chap. 1.VI<br>USAM 9-119.108<br>USAM 9-111.600 |
| EAJA Awards | *AFMLS* must give approval to use funds to pay EAJA awards arising from forfeiture actions | Policy Manual Chap. 8.I.B<br>USAM 9-119.105<br>USAM 9-117.210 |
| Equitable Sharing/Official Use | *Deputy Attorney General* must approve equitable sharing in cases involving (1) $1 million or more in forfeited assets, (2) multi-district cases, or (3) cases involving real property transfers to a state or local agency for law enforcement related use | Policy Manual Chap. 6 n.130<br>USAM 9-119.106 |
| Equitable Sharing/Official Use | *Attorney General* and *Secretary of State* approval required before forfeited assets can be shared internationally | Policy Manual Chap. 6.IV<br>USAM 9-119.107<br>USAM 9-116.400 |
| Equitable Sharing/Official Use | *USAO* must consult with *AFMLS* or with seizing agency during 12-month holding period to release hold on property and allow petition for remission process to proceed (and equitable sharing, etc) | Policy Manual Chap. 4.II.E.2 |
| Equitable Sharing/Official Use | Notification must be provided to *AFMLS* of all equitable sharing agreements approved by the USAO under $1 million from judicial forfeitures | Policy Manual Chap. 6.II.B<br>USAM 9-116.210 |
| Equitable Sharing/Official Use | *AFMLS* should be notified if seizing agency decides to place property into agency's official use and the property is valued at $50,000 or more | Policy Manual Chap. 5.VI<br>USAM 9-118.440IV.D |

I — 2